**PENNSYLVANIA COMPANY FOR BANKING & TRUSTS, etc. et, Plaintiffs-Appellants, v. UNION BANK OF COMMERCE COMPANY et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21667.   Decided April 10, 1951.

Dorr E. Warner, J. Albert Lowell, Cleveland, for plaintiffs-appellants.

C. Wm. O'Neill, Atty Genl., Columbus, for defendants-appellees.

(DOYLE, J, HUNSICKER, J, of the 9th District: MONTGOMERY, J, of the 5th District, sitting by designation in the 8th District.)

**OPINION**

By DOYLE, J:

Under the terms of a plan of reorganization (carried out later in full detail) for the liquidation of The Union Trust Company, and the creation of a new bank, stockholders of the liquidated bank, who had paid their assessed double liability in full were given certain rights. The plaintiffs herein are stockholders in the liquidated bank who have paid their assessments in full but who have been denied a right, which they claim to exist, to share with others who paid their double liability in full, in the ownership of a proportionate number of shares of the newly created bank within the terms of the reorganization plan.

The plan itself has been tested in the courts on numerous occasions and has been approved in every instance. Its legality cannot now be successfully challenged.

In brief, pursuant to the plan and under authority of §710-95 GC, the Superintendent of Banks sold to the newly created bank, The Union Bank of Commerce, certain assets held by him as liquidating officer of the stricken bank. In consideration, therefore, there was transferred to certain named trustees "1/20 share of the fully paid $100.00 par value common stock of the new bank for each share of stock of the old bank" owned by a qualifying stockholder of the old bank, for the account of such stockholder of the old bank, the deliverance of which stock, however, being subject to the payment of certain obligations of the liquidation.

Under the arrangement, stockholders who, **prior to the consummation of the plan** (April 11, 1938) had paid their double liability in full, and executed and delivered a stockholder's consent and agreement to the plan and to the various "conveyances and agreements" to be made by the Superintendent of Banks as provided in the plan and agreed to accept the benefits of the plan in full satisfaction of their claims as stockholders growing out of their ownership of stock in the old bank and their payment of double liability etc., were given certain rights entitling them to stock in the new bank upon the conditions therein stated.

Under other provisions of the plan, it was provided that stockholders of the old bank who had paid their double li-

ability assessment, together with interest thereon **"at any time before the expiration of one year after the time this plan is consummated"** and who "within the time such payment is required, execute and deliver * * * a complete release and discharge of it and of the superintendent of the Old Bank from any claims which such stockholder may have against them or any of them growing out of the ownership of such stockholder's stock in the Old Bank or his payment of double liability assessed thereon; and * * * surrender for cancellation the certificate or certificates representing the shares of stock in the Old Bank in respect to which the double liability assessment against him was made, together with any receipt, or receipt and agreement, which the superintendent may have delivered as evidence of, or in connection with. the payment of such assessment on such shares" would be given rights entitling them to stock in the new bank after the payment of specified obligations of the trustee etc. In connection with these rights it was further specifically stipulated that "the obligation * * * to deliver or cause to be delivered such stock of the new bank to said trustees for the account of such stockholder, shall be expressly conditioned upon the receipt * * * of the double liability and interest payments * * * after this plan is consummated on account of such stockholder's stock in the Old Bank."

The plan further provided that new bank stock held by the trustee in excess of the amount needed for those old bank stockholders who had paid their double liability and consented to the terms of the plan **"within a year after the consummation of the plan"** will be assigned and transferred to the new bank. This provision is as follows:

"That if and when the creditors' notes shall have been fully paid or satisfied, it will assign and transfer to the New Bank all of the shares of the common capital stock of the New Bank * * * which are not used by it in settling the claims of stockholders of the Old Bank * * *."

It seems proper to herein insert that the fulfillment of the rights given to old stockholders to stock in the new bank was originally conditioned upon the payment of many obligations. The stock to which the rights were given was pledged for such purpose. These obligations were all met and the stockholders of the old bank who qualified under the plan were awarded their allocated number of shares in the new bank. This is true of those who (1) fell in the category of persons who qualified prior to the consummation of the plan, as well as to those (2) who fell into the class of stockholders who qualified within a year after its consummation. The fact is

further established that some shares of stock were not used in settling the rights of the old stockholders who fell into the second category above and they were accordingly assigned and transferred to the new bank under authority of a provision of the plan heretofore set forth and subsequently this stock was retired.

Supplementing now the first paragraph, it appears that the plaintiffs have grouped themselves into a class. They all paid their double liability assessment on the stock which they owned, but they, for some reason, objected to the plan of reorganization and refused to comply with the conditions which would qualify them to participate in the rights given to stockholders of the old bank. As a result of their refusal, they were deprived of the rights to stock in the new bank which would have been theirs had they consented and performed the various acts heretofore set out under the terms of the plan. These petitioners now say that they are entitled to 191 shares of the new stock (or its equivalent) because, under the plan itself (which they do not and cannot now challenge), the new bank, holds this stock, or its equivalent, by way of a trust—it, the new bank, having acquired this asset through the use of their money.

In consideration of the issues created by the pleadings, this Court is of the opinion that from the facts presented, there is shown to exist neither an express, resulting, nor a constructive trust through which the petitioners can secure the relief sought. The money which they paid as the result of a double liability assessment imposed upon all stockholders of the bank, became a part of a single fund and was used for the benefit of the creditors having valid claims. The well known principles of trusts have been carefully reexamined in view of the opinion of the trial judge in the court of common pleas. We can find no justification for their application to this case.

It is the further conclusion of this court that the defense of res adjudicata is established. The issues here presented have been adjudicated in previous litigation under circumstances which justify the application of the rule.

The petitions of the plaintiffs appellants will be dismissed. Exc. Order see journal.

HUNSICKER, J, MONTGOMERY, J, concur.